## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| DANIEL MITCHELL, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) ) | Case No. |
| v. | ) ) | |
| | ) | **CLASS ACTION COMPLAINT FOR** |
| CALGON CARBON CORPORATION, | ) | **VIOLATIONS OF SECTIONS 14(a) AND** |
| RANDALL S. DEARTH, TIMOTHY | ) | **20(a) OF THE SECURITIES** |
| GLENN RUPERT, WILLIAM R. | ) | **EXCHANGE ACT OF 1934** |
| NEWLIN, LOUIS S. MASSIMO, JULIE S. | ) | |
| ROBERTS, WILLIAM J. LYONS, J. RICH | ) | **JURY TRIAL DEMANDED** |
| ALEXANDER, DONALD C. TEMPLIN, | ) | |
| and JOHN J. PARO, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) ) ) ) | |

Plaintiff Daniel Mitchell ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## <u>NATURE OF THE ACTION</u>

1.     This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Calgon Carbon Corporation ("Calgon" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Calgon, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100 in connection with the proposed merger (the "Proposed Merger") between Calgon and Kuraray Co., Ltd. ("Kuraray").

2.     On September 21, 2017, the Board caused the Company to enter into an agreement

and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to receive $21.50 in cash for each share of Calgon stock they own (the "Merger Consideration"), representing $1.1 billion in equity value.

3.     On October 27, 2017, in order to convince Calgon shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement on a Schedule 14A (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     While Defendants are touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, they have failed to disclose certain material information in violation of Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. 240.14a-9), each as required by Section 14(a) of the Exchange Act.

5.     In particular, the Proxy contains materially incomplete and misleading information concerning: (i) management's financial projections for the Company that were relied upon by the Board in recommending the Company's shareholders vote in favor of the Proposed Merger; and (ii) financial projections utilized by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley").

6.     It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the forthcoming stockholder vote in order to allow the Company's stockholders to make an informed decision regarding the Proposed Merger.

7.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violation of (i) Regulation G (17 C.F.R. § 244.100) and (ii) Rule 14a-9 (17 C.F.R. 240.14a-9). Plaintiff seeks to enjoin Defendants from holding the stockholders vote on the Proposed Merger

and taking any steps to consummate the Proposed Merger unless, and until, the material information discussed below is disclosed to Calgon stockholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Calgon is incorporated in this District.

## PARTIES

11.     Plaintiff is, and at all relevant times has been, a holder of Calgon common stock.

12.     Defendant Calgon is incorporated in Delaware and maintains its principal executive offices at 3000 GSK Drive, Moon Township, Pennsylvania 15108.  The Company's common stock trades on the NASDAQ under the ticker symbol "CCC."

13.     Individual Defendant Randall S. Dearth has served as a director of the Company since 2007 and the Chairman since May 2014.  He has also served as the Company's President and Chief Executive Officer since August 2012.

14.     Individual Defendant Timothy Glenn Rupert has served as a director of the Company since 2005.

15.     Individual Defendant William R. Newlin has served as a director of the Company since November 2005.

16.     Individual Defendant Louis S. Massimo has served as a director of the Company since May 2013.

17.     Individual Defendant Julie S. Roberts has served as a director of the Company since July 2000.

18.     Individual Defendant William J. Lyons has served as a director of the Company since 2008.

19.     Individual Defendant J. Rich Alexander has served as a director of the Company since August 2009.

20.     Individual Defendant Donald C. Templin has served as a director of the Company since May 2013.

21.     Individual Defendant John J. Paro has served as a director of the Company since August 2013.

22.     The Individual Defendants referred to in paragraphs 13-21 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Calgon (the "Class").  Excluded from the Class are Defendants

herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

24.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable.  As of October 26, 2017, there were approximately 50,810,967 shares of Calgon common stock outstanding, held by hundreds of individuals and entities scattered throughout the country. The actual number of public shareholders of Calgon will be ascertained through discovery;

b.     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

      i)     whether Defendants disclosed material information that includes non-GAAP financial measures without providing a reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

      ii)     whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy in violation of Section 14(a) of the Exchange Act;

      iii)     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

      iv)     whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the

Proposed Merger based on the materially incomplete and misleading Proxy.

c.  Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.  Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.  A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

I.  **The Proposed Merger**

25.  Calgon manufactures, supplies, reactivates, and applies activated carbon as well as provides ballast water treatment, ultraviolet light disinfection, and advanced ion-exchange

technologies.   The Company operates in three segments, Activated Carbon and Service, Equipment, and Consumer.

26.   On September 21, 2017, Calgon and Kuraray issued a joint press release announcing the Proposed Merger, which states in pertinent part:

> Pittsburgh, PA and Tokyo, Japan - September 21, 2017 - Calgon Carbon Corporation (NYSE:CCC) and Kuraray Co., Ltd. (TYO:3405) announced today that their respective Boards of Directors have unanimously approved, and the parties have entered into, a definitive merger agreement under which Kuraray will acquire Calgon Carbon for $21.50 per share in cash, which equates to an equity value of approximately $1.1 billion, and a transaction value in excess of $1.3 billion, including Calgon Carbon's net indebtedness. The transaction remains subject to customary closing conditions, including regulatory approvals and approval by Calgon Carbon stockholders. The parties are targeting a closing by the end of December, 2017. The acquisition will be completed through a merger of a newly-created subsidiary of Kuraray with and into Calgon Carbon, with Calgon Carbon as the surviving corporation.
>
> While this acquisition will enhance Kuraray's growth strategy and global presence in activated carbon and filtration media, it intends to operate Calgon Carbon as a separate subsidiary of Kuraray. The companies will align the organization and operation for optimal customer support from Calgon Carbon's world headquarters in Pittsburgh, Pennsylvania. Kuraray and Calgon Carbon have complementary products and services, and the combined organization will continue to focus on the highest quality activated carbon and filtration media products, equipment and services for customers around the world. The combination will strengthen Kuraray's focus on contributing to human health, and the sustainability of the environment through innovative and high quality products around the world.
>
> Randy Dearth, Calgon Carbon's Chairman, President and CEO, said of the acquisition, "Not only does this transaction deliver premium value to our stockholders, it also benefits our customers and employees by making Calgon Carbon part of a much larger, stronger global company with resources to fully support our global activated carbon, filtration media and service businesses now, and well into the future."
>
> Masaaki Ito, Kuraray's Representative Director and President said, "For Kuraray, the integration of Calgon Carbon's excellent employees all around the world, their R&D and sales expertise, and their manufacturing operations will contribute to the expansion of our carbon materials business, which leads our key strategic areas such as 'water and environment,' and 'energy.' Together, Kuraray and Calgon Carbon will help advance human health and environmental sustainability by providing high performance carbon materials to the market."

27.    The Merger Consideration appears inadequate in light of the Company's recent financial performance and prospects for future growth.  For instance, the Company appears to be emerging from a recent down cycle as it has reported positive sales growth over the past three fiscal quarters, positive EBITDA growth over the past two quarters.  The Company has also reported triple-digit growth in earnings per share over the past two quarters.

28.    In sum, it appears that Calgon is well-positioned for financial growth, and that the Merger Consideration fails to adequately compensate the Company's shareholders.  It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

## II.    The Materially Incomplete and Misleading Proxy

29.    On October 27, 2017, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Merger.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits both required and material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### *Financial Projections that Violate Regulation G and SEC Rule 14a-9*

30.    The Proxy discloses certain financial projections for the Company on page 50 of the Proxy.  However, the Proxy fails to provide material information concerning the Projections,

which were developed by the Company's management and relied upon by the Board in recommending that the shareholders vote in favor of the Proposed Merger.  Proxy 39.

31.    Specifically, the Proxy provides values for non-GAAP (generally accepted accounting principles) financial metrics, EBITDA and Adjusted Net Income Per Share, but fails to provide: (i) the line item projections detailed below for the metrics used to calculate these non-GAAP measures; or (ii) a reconciliation of the non-GAAP projections to the most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).  Proxy 39.

32.    When a company discloses non-GAAP financial measures in a Proxy that were relied on by a board of directors to recommend that shareholders exercise their corporate suffrage rights in a particular manner, the Company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.

33.    Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders.  Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Calgon included in the Proxy here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.  Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors.

And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

34.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[2] Indeed, the SEC's Division of Corporation Finance released a new and updated Compliance and Disclosure Interpretation ("C&DIs") on the use of non-GAAP financial measures to clarify the extremely narrow and limited circumstances, known as the business combination exemption, where Regulation G would not apply.[3]

35.     More importantly, the C&DI clarifies when the business combination exemption does not apply:

There is an exemption from Regulation G and Item 10(e) of Regulation S-K for non-GAAP financial measures disclosed in communications subject to Securities Act Rule 425 and Exchange Act Rules 14a-12 and 14d-2(b)(2); it is also intended to apply to communications subject to Exchange Act Rule 14d-9(a)(2). This exemption does not extend beyond such communications. Consequently, if the same non-GAAP financial measure that was included in a communication filed

---

[1]     Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

[2]     *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[3]     *Non-GAAP Financial Measures*, U.S. Securities and Exchange Commission (Oct. 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm#101.  To be sure, there are other situations where Regulation G would not apply but are not applicable here.

under one of those rules is also disclosed in a Securities Act registration statement, proxy statement, or tender offer statement, this exemption from Regulation G and Item 10(e) of Regulation S-K would not be available for that non-GAAP financial measure.

*Id.*

36.     Thus, the C&DI makes clear that the so-called "business combination" exemption from the Regulation G non-GAAP to GAAP reconciliation requirement applies solely to the extent that a third-party such as financial banker has utilized projected non-GAAP financial measures to render a report or opinion to the Board.  To the extent the Board also examined and relied on internal financial projections to recommend a transaction, Regulation G applies.

37.     Because the Proxy explicitly discloses that the Projections were utilized by the Company and the Board "for the purposes of considering, analyzing and evaluating Calgon Carbon's strategic and financial alternatives, including the merger[,]" Proxy 48, no exemption from Regulation G is applicable.

38.     Thus, in order to bring the Proxy into compliance with Regulation G as well as cure the materially misleading nature of the Projections under SEC Rule 14a-9 as a result of the omitted information on page 39, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

39.     At the very least, the Company must disclose the line item projections for the financial metrics that were used to calculate the aforementioned non-GAAP measures.  Such projections are necessary to make the non-GAAP projections included in the Proxy not misleading. Indeed, the Defendants acknowledge the misleading nature of non-GAAP projections as Calgon stockholders are cautioned:

> EBITDA should not be considered in isolation or as a substitute for net income, operating income, cash flows from operating activities or any other measure of financial performance presented in accordance with GAAP or as a measure of a company's profitability or liquidity. Because EBITDA excludes some, but not all,

items that affect net income, this measure may vary among companies, including Calgon Carbon. The EBITDA data presented below may not be comparable to similarly titled measures of other companies.

Proxy 49.

### *Financial Projections that Violate SEC Rule 14a-9*

40.     Moreover, certain line items of the Projections were also utilized by the Company's financial advisor, Morgan Stanley, to render a report to the Board of its opinion regarding the fairness of the Proposed Transaction.  Proxy 48.  Specifically, Morgan Stanley utilized certain of management projected line item financial measures, based upon guidance from the Company's management, including tax-affected earnings before interest and taxes, stock-based compensation expense, depreciation and amortization, capital expenditures and other investing activities, adjustments for changes in net working capital and other operating activities, in order to calculate the Company's unlevered free cash flows ("UFCF").  Proxy 58.[4]

41.     The definition of UFCF is, in and of itself, and separate and apart from the mandates of Regulation G, materially false and/or misleading in violation of SEC Rule 14a-9 (17 C.F.R. 240.14a-9).  Because neither the UFCF projections nor the line items used to calculate UFCF are disclosed, stockholders are unable to discern the veracity of Morgan Stanley's discounted cash flow analysis, which is based upon undisclosed financial projections for the Company.  Without further disclosure of the UFCF projections and the line items used in its calculation, stockholders are unable to compare Morgan Stanley's UFCF calculations with the Company's financial projections.  Thus, the Company's stockholders are being materially misled regarding the value of the Company.

---

[4]     Plaintiff alleges, based on the clear and plain language of Regulation G, that all non-GAAP internal financial projections that were relied on by the Board must comply with Regulation G, even if Morgan Stanley also utilized those financial projections.

42.     These key inputs are material to Calgon shareholders, and their omission renders the summary of Morgan Stanley's DCF valuation analysis incomplete and misleading.   As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."   Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).   Such choices include "the appropriate discount rate, and the terminal value…" *Id*.   As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value… The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

43.     Clearly, shareholders would find this information material since the Board's unanimous recommendation that shareholders vote in favor the Proposed Merger was based, in part on the following:

- Calgon Carbon's business and operations, strategy, its current and historical financial condition and results of operations, and projected performance.

- The perceived challenges and risks of continuing as a standalone public company, and the assessment that no other internally developed alternatives were reasonably likely in the near term to create greater value for Calgon Carbon stockholders than the merger, taking into account business, competitive, industry and market risks. . . .

- The strategic and financial alternatives reasonably available to Calgon Carbon, and the risks and uncertainties associated with those alternatives, none of which were deemed likely to result in value to Calgon Carbon stockholders that would exceed, on a present-value basis, the value of the merger consideration.

Proxy 44-45.

44.     In sum, the Proxy independently violates both: (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial to their most directly comparable GAAP equivalent; and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.  As the Proxy independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the Proxy to garner votes in support of the Proposed Merger from Calgon shareholders.

45.     Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act
and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder)**

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

48.     As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a).  SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure.  17 C.F.R. § 244.100(a).

49.     The failure to reconcile the numerous non-GAAP financial measures included in the Proxy violates Regulation G and constitutes a violation of Section 14(a).

## COUNT II

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act
and Rule 14a-9 Promulgated Thereunder)**

50.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51.     SEC Rule 14a-9 prohibits the solicitation of shareholder votes in proxy communications that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

52.     Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure, contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure…not misleading*." 17 C.F.R. § 244.100(b) (emphasis added).

53.     Defendants have issued the Proxy with the intention of soliciting shareholder

support for the Proposed Merger.   Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

54.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).   The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

55.    The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

56.    The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

57.    The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required

to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

58.    Calgon is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

59.    The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

60.    Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

**(Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act)**

61.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

62.    The Individual Defendants acted as controlling persons of Calgon within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Calgon, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

63.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in preparing the Proxy.

65.     In addition, as described herein and set forth at length in the Proxy, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

66.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

67.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

68.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise

of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.      Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.      Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated:  November 2, 2017

Respectfully submitted,

**FARUQI & FARUQI, LLP**

**OF COUNSEL:**

By: _/s/ Michael Van Gorder_

**FARUQI & FARUQI, LLP**

Michael Van Gorder (#6214)

Nadeem Faruqi

20 Montchanin Road, Suite 145

James M. Wilson, Jr.

Wilmington, DE 19807

685 Third Ave., 26th Fl.
New York, NY 10017
Tel.: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*

Tel.: (302) 482-3182
Email: mvangorder@faruqilaw.com

*Counsel for Plaintiff*